<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                                              :
BARBARA PHILLIPS,                              :
                                                              :
                        Plaintiff,                      :
                                                              :          Civil Action No. 05-1056 (JAG)
                        v.                               :
                                                              :                **OPINION**
COMMISSIONER OF SOCIAL            :
SECURITY,                                          :
                                                              :
                        Defendant.                   :
_____:


<u>GREENAWAY, JR., U.S.D.J.</u>

<u>INTRODUCTION</u>

Plaintiff Barbara Phillips, pursuant to 42 U.S.C. §§ 1383(c)(3), 405 (g),[1] seeks review of

the Commissioner of Social Security Administration's ("Commissioner") decision denying her

application for Period of Disability ("POD"), Disability Income Benefits ("DIB") and

Supplemental Security Income ("SSI") benefits.  Plaintiff argues that the decision is not

supported by substantial evidence and should be reversed.  For the reasons set forth in this

Opinion, this Court finds that the Commissioner's decision is supported by substantial evidence

and should be affirmed.

_____

[1] These sections of the Social Security Act (hereinafter "Act") provide that any individual
may obtain a review of any final decision of the Secretary of Health and Human Services
("Secretary") made subsequent to a hearing to which he or she was a party.  The federal district
court for the district in which the plaintiff resides is the appropriate place to bring such action.
42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On June 5, 2002, Plaintiff filed an application for POD, DIB, and SSI benefits, pursuant to Sections 216(i), 223, and 1614(a)(3)(A) of the Social Security Act, codified as 42 U.S.C. §§ 416(i), 423, 1382(a)(3)(A), respectively.  (Tr. 17.)  Plaintiff's claim is based on her alleged disabilities of hepatitis C,[2] fatigue, swelling, pain, and hot and cold chills.  (Tr. 12.)  Following the Social Security Administration's denial of Plaintiff's application on January 9, 2003 (Tr. 20), Plaintiff filed a request for reconsideration on April 17, 2003 (Tr. 26).  The denial was affirmed on May 19, 2003.  (Tr. 28.)  Subsequent to Plaintiff's request for a hearing, dated May 23, 2003, Plaintiff appeared before Administrative Law Judge Michael L. Lissek ("ALJ Lissek") on June 17, 2004.  (Tr. 46.)  ALJ Lissek issued a decision on July 2, 2004, finding that the Plaintiff was not eligible for POD, DIB, or SSI benefits based on her disabilities.  (Tr. 17.)  The following is a summary of his findings:

1.   The claimant met the special insured status requirements of the Act on January 1, 2002, the date the claimant alleges she became unable to work, and continues to meet them through December 31, 2006.

2.   The claimant has not engaged in substantial gainful activity since January 1, 2002.

3.   The medical evidence establishes that the claimant has "severe" gastrointestinal impairments, but does not establish medical findings, which "meet" or "equal" in severity the clinical criteria of any impairment listed in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4.  Her alleged cardiac and skin impairments are "not severe" in nature.

---

[2] Hepatitis C is "a type of hepatitis transmitted most commonly by blood transfusion. . . . The disease progresses to chronic hepatitis in up to 80% of the patients acutely infected." Mosby's Medical, Nursing, & Allied Health Dictionary 805 (6th ed. 2002) [hereinafter "Mosby's"].

4.      The claimant's subjective complaints and statements of record are not credible, not consistent with the evidence and not supported by the evidence of record.

5.      The claimant retains the residual functional capacity for sedentary work activity.

6.      The claimant has the residual functional capacity to perform her past relevant work as a financial assistant.

7.      The claimant has not been under a "disability," as defined in the Social Security Act, as amended, since January 1, 2002.

(Tr. 16-17.)  Based on these findings, ALJ Lissek concluded that Plaintiff was not eligible for POD, DIB, or SSI benefits under 216(i), 223, and 1614(a)(3)(A) of the Act.  (Tr. 17.)  On December 28, 2004, Plaintiff's request for review of ALJ Lissek's decision was denied.  (Tr. 3-5.)  Pursuant to 42 U.S.C. §§1383(c)(3) and 405(g), Plaintiff filed the instant action, seeking reversal of the Commissioner's decision.

## STATEMENT OF THE FACTS

**A.      Background**

Plaintiff, Barbara Phillips, was born on January 16, 1948, (Tr.18) and stopped working on March 8, 2002 because of her claimed disabilities (Tr. 52).  From January 2001 to March 2002, Plaintiff worked as a job coach for the Urban League of Hudson County.  (Id.)  Her job consisted mainly of interviewing clients and computer work, with some occasional filing.  (Tr. 65.)  Prior to that, Plaintiff worked as a financial assistant for an HMO, a sales associate for various retail companies, and a driver for Airborne Express, where she frequently carried packages lighter than ten pounds.  (Tr. 66-69.)

3

**B.**     **Claimed Disabilities**

Plaintiff stopped working in March 2002, allegedly because her hepatitis C disabled her, and because of increasing fatigue, dizziness, fevers, weight loss, and decreasing muscle strength that accompanied the disease and its treatment.  (Tr. 169-70.)  Plaintiff also suffers from herpes zoster, cellulitis, cardiac problems, cirrhosis, Barrett's syndrome, esophagitis, and uterine fibroids, some of which she alleges are connected with the hepatitis C.  (Id.)  Plaintiff testified that because of her fatigue, she could not walk for too long, and required daily naps around noon.  (Tr. 176, 193.)  Plaintiff further testified that due to the cellulitis on the left side of her body, she had difficulty sitting for long periods of time.  (Tr. 186-187.)  The hepatitis allegedly led to heart problems which caused Plaintiff to suffer from shortness of breath and overexertion.  (Tr. 189.)  Additionally, Plaintiff claims that she suffers from decreased strength and grip in her arms, hands, and shoulders, likely due to arthritis.  (Id.)

**C.**     **Medical Evidence Considered by the ALJ**

The record indicates that Plaintiff has been evaluated by physicians on numerous occasions.  Specifically, ALJ Lissek reviewed and analyzed medical evidence submitted by Dr. Sastry, Plaintiff's cardiologist, and Dr. Hoffman, an internist, as well as emergency room records.  (Tr. 13.)

**1.**     **Dr. Pilluta Sastry's Examination**

On June 11, 2001, Dr. Pilluta Sastry examined Plaintiff.  (Tr. 94.)  At the time, Plaintiff was five feet six inches tall, and weighed 155 pounds.  (Id.)  The examination revealed a soft, non-tender abdomen, as well as a systolic heart murmur.  (Id.)  At the time of the hearing, Dr. Sastry had not seen Plaintiff since this examination, as she was placed under the care of a

4

gastroenterologist.  (Id.)

### 2.      **Dr. Anaka Prakash's Examination**

In September 2001, Plaintiff underwent numerous procedures at Bayonne Hospital under the care of Dr. Anaka Prakash.  (Tr. 99-111.)  On September 4, Dr. Prakash performed an esophagogastroduodenoscopy on Plaintiff to perform a biopsy of the esophagogastric junction and the antrum.  (Tr. 108- 09.)  The procedure revealed that Plaintiff suffers from esophagitis, and a biopsy of the esophagus was taken.  (Id.)  The biopsy confirmed the esophagitis diagnosis. (Id.)  Additionally, the test revealed mild gastritis in the stomach, and Dr. Sastry recommended treatment with Prevacid, a colonoscopy, an ultrasound of the liver and gallbladder, and liver function tests.  (Tr. 109.)  On September 6, a colonoscopy and polypectomy were performed which revealed the presence of internal hemorrhoids and one ten millimeter size polyp, but no mass lesions.  (Tr. 103-104.)  On September 26, a liver biopsy exposed irregular bands of fibrosis and both piecemeal and individual cell necrosis.  (Id.)  Dr. Prakash determined that Plaintiff was suffering from chronic hepatitis, Grade 3, Stage 4, consistent with hepatitis C.  (Tr. 99.)

### 3.      **Bayonne Emergency Room Report**

On February 5, 2002, Plaintiff visited the emergency room at Bayonne Hospital complaining of redness to the lower left calf area that had persisted for two to three days.  (Tr. 129.)  A similar incident had occurred a year before and had been treated successfully with antibiotics.  (Id.)  At this time, Plaintiff appeared well-nourished and had a regular heart rate and rhythm.  (Id.)  Plaintiff was diagnosed with cellulitis and discharged with medication.  (Id.)

### 4.      **Dr. Alexander Hoffman's Report**

On September 12, 2002, Dr. Alexander Hoffman of the Division of Disability

Determination examined Plaintiff.  (Tr. 132.)  Dr. Hoffman described Plaintiff as thin and

"slightly haggard looking," though she weighed 138 pounds.  (Id.)  Plaintiff's heart size was

normal, with no indication of murmur or friction rub, though the electrocardiogram revealed

borderline changes possibly indicative of myocardial ischemia.  (Id.)  Her abdomen was soft and

non-tender, and there was no swelling of the lower extremities.  Dr. Hoffman reported scarring,

possibly from her cellullitis, and also noted decreased muscular strength and grip strength.  (Id.)

Additionally, Dr. Hoffman indicated that Plaintiff's weight loss and fatigue were "probably

related" to her hepatitis.  (Tr. 133.)

## DISCUSSION

### A.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C.

§ 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial

evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services,

841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co.

v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of

evidence but may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

1988) (citing Stunkard, 841 F.2d at 59).  The reviewing court must consider the totality of the

evidence and then determine whether there is substantial evidence to support the Commissioner's

decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).  Furthermore, the reviewing

court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-

finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom.

Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir.

1984)).

   In the determination of whether there is substantial evidence to support the

Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2)

the diagnoses and expert opinions of treating and examining physicians on subsidiary questions

of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family

and neighbors; (4) the claimant's educational background, work history and present age."

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973); Curtin v. Harris, 508 F. Supp. 791,

793 (D.N.J. 1981). Where there is substantial evidence to support the Commissioner's decision,

it is of no consequence that the record contains evidence which may also support a different

conclusion. Blalock, 483 F.2d at 775.

**B.**  **Statutory Standards**

   The claimant bears the initial burden of establishing his or her disability.  42 U.S.C.

Section 423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is

needy and aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under

the Act if he is unable to "engage in substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability

is predicated on whether a claimant's impairment is so severe that he "is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D. Del. 2002). Finally,

while subjective complaints of pain are considered, alone, they are not enough to establish

disability. 42 U.S.C. § 423(d)(5)(A). An impairment only qualifies as a disability if it "results

from anatomical, physiological or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

### C.    The Five Step Evaluation Process and the Burden of Proof

Determinations of disability are made by the Commissioner, pursuant to the five-step

process outlined in 20 C.F.R. § 404.1520. At the first step of the review, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity.[3] 20 C.F.R. §

404.1520(b). If a claimant is found to be engaged in such activity, the claimant is not "disabled"

and the disability claim will be denied. Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant is suffering from a

severe impairment. 20 C.F.R. §§ 404.1520(a)(ii), (c). An impairment is severe if it

"significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In

determining whether the claimant has a severe impairment, the age, education, and work

experience of the claimant will not be considered. Id. If the claimant is found to have a severe

impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's

impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed

in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1594(f)(2). If the claimant's

---

[3] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

impairment(s) meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[4] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  (Id.)  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform his past relevant work, he will not be found disabled under the Act.  In Burnett, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant

[4] Hereinafter "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

work.

Burnett, 220 F.3d at120.  If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. § 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, claimant will not be found disabled.  Id.

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523; Parker v. Barnhart, 244 F. Supp. 2d 360, 369 (D. Del. 2003).  However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits.  See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability); see also Marcus v. Barnhart, No. C.A. 02-3714, 2003 WL 22016801 at *2 (E.D. Pa. Jun. 10, 2003) (stating that "the burden was on [Plaintiff] to show that the combined effect of her impairments limited one of the basic work abilities").

While Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as their interpretation in Jones, to every step of the

10

decision.  See, e.g., Rivera v. Comm'r, No. 05-1351, 2006 U.S. App. LEXIS 2372 at *3 (3d Cir.
Jan. 31, 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and
analysis to allow for meaningful judicial review," but need not "adhere to a particular format."
Id.

**D.      ALJ Lissek's Findings**

ALJ Lissek applied the five step sequential evaluation and determined that Plaintiff
retained the residual functional capacity to return to her past relevant work as a financial
assistant.  (Tr. 16.)  At the first step, ALJ Lissek determined that Plaintiff had not engaged in
substantial gainful activity since January 1, 2002, the alleged onset date.  (Tr. 12.)

At the second step, ALJ Lissek determined that Plaintiff's "gastrointestinal, cardiac, and
skin impairments . . . constitute 'severe' medical impairments."  (Tr. 13.)  However, at the third
step, ALJ Lissek determined that none of Plaintiff's impairments met or equaled the level of
severity and duration of any impairment in the Listing of Impairments, Appendix 1, Subpart P,
Regulations No. 4.  (Id.)  The ALJ considered the Listing sections regarding digestive disease
body system (Sections 5.00 et seq.), cardiovascular body system, and skin body system, and
concluded that no treating or examining physician reported clinical findings meeting the severity
requirements of the Listing criteria.  (Id.)  Furthermore, ALJ Lissek found that Plaintiff's
digestive and cardiac problems, considered singly or in combination, were not accompanied by
abnormal test results, or any of the secondary complications required by the Listing of
Impairments, such as esophageal varices, shunt operation, serologic abnormalities, ascites,
hepatic encephalopathy, hepatic cell necrosis, or inflammation.  (Id.)  Additionally, Plaintiff's
diagnosed systolic heart murmur does not satisfy any condition in the cardiovascular body system
listings.  (Id.)

11

In analyzing Plaintiff's residual functional capacity at the fourth step, ALJ Lissek concluded that Plaintiff's description of her physical limitations is neither credible nor consistent with the record.  (Id.)  As Plaintiff's heart murmur and borderline abnormal EKG have not required surgery nor resulted in significant functional limitations, ALJ Lissek found them to constitute non-severe medical impairments.  (Tr. 14.)  Additionally, neither Plaintiff's claimed boils nor cellulitis satisfied the twelve month duration requirement, and the cellulitis was successfully treated with antibiotics.  (Id.)  ALJ Lissek found that the record indicated diagnoses of gastritis, Barrett's esophagus, and esophagitis, but these disorders were also treated successfully with diet and medicines, and did not affect Plaintiff's ability to work.  (Id.)

Finally, while Plaintiff's diagnosis of Hepatitis C is supported by the record, her related complaints of bloating, severe fatigue, weight loss, and dyspnea are not supported.  (Id.)  Dr. Sastry's examination revealed a non-tender abdomen, while Dr. Hoffman found active bowel sounds and no organomegaly.  (Id.)  ALJ Lissek also found that while Plaintiff did lose some body weight, she did not exhibit signs of malnutrition, and the weight loss was not extreme for her height.  (Id.)

Based on the evidence in the record, as well as the medical expert's testimony, ALJ Lissek found that Plaintiff was able to perform a full range of sedentary work,[5] restricted only by her alleged hepatitis related fatigue.  (Tr. 16.)  ALJ Lissek also found that Plaintiff retained the residual functional capacity to engage in the level of sedentary work required at her past relevant job as a financial assistant.  (Id.)

---

[5] Sedentary work activity involves lifting no more than ten pounds, and occasionally lifting and carrying less than ten pounds, as well as sitting for a period of six to eight hours a day. (Tr. 16 (citing 20 C.F.R. § 404.1567(a)).)

E.      **Analysis**

Plaintiff contends that ALJ Lissek's decision should be reversed because the ALJ's decision was not supported by substantial evidence.  (Pl.'s Br. at 3.)  Plaintiff specifically contends that: 1) Dr. Martin Fechner was not qualified to testify as a medical expert (Pl.'s Br. at 10); 2) ALJ Lissek erred by not giving any evidentiary support for his Residual Functional Capacity ("RFC") determination (Pl.'s Br. at 26); 3) ALJ Lissek erred by concluding that Plaintiff could perform her past relevant work as a financial assistant (Pl.'s Br. at 30); and 4) the ALJ ignored the Commissioner's Pain Regulations (Pl.'s Br. at 34).

1.      **Did the ALJ Err in Allowing Dr. Martin Fechner to Testify as the Medical Expert?**

ALJ Lissek found that Dr. Martin Fechner was a well-qualified expert with many years of experience treating patients with liver diseases.  (Tr. 15.)  Additionally, Dr. Fechner possessed sufficient familiarity with the disability requirements.  (Id.)  Plaintiff claims that Dr. Martin Fechner was not qualified to testify as a medical expert.  (Pl.s Br. at 10.)  However, Plaintiff cites no law to support the argument that the ALJ erred by allowing Dr. Fechner to testify.

A medical expert is competent to testify even if his area of specialty does not lie in the same area of medicine as Plaintiff's disability.  Kepple v. Massanari, 268 F.3d 513, 516 (7th Cir. 2001).  Plaintiff argues that Dr. Fechner's lack of knowledge of different grades of hepatitis, and failure to treat patients with severe liver disorders or esophageal problems renders him incapable as a medical expert.  However, Dr. Fechner is certified as an internist, a doctor who practices in "the branch of medicine concerned with the study of the physiologic and pathologic characteristics of the internal organs and with the medical diagnosis and treatment of disorders of

these organs." Mosby's at 911.  Also, Dr. Fechner testified that he occasionally treats patients

with liver disease, sending them to specialists for necessary tests.  (Tr. 211-12.)  When asked if

he knew whether Plaintiff's Barrett's esophagitis was connected to her Hepatitis C, Dr. Fechner

responded that he has "been trained as an internist . . . this is what we know. . . . This is what we

do for a living."  (Tr. 213.)  Plaintiff has failed to demonstrate how the ALJ's decision to allow

Dr. Fechner to testify was in error.

 Plaintiff also contends that ALJ Lissek erred by not allowing Dr. Harlan Mellk, whom

Plaintiff contends is an expert on liver disease, to testify.  (Pl.'s Br. at 10.)  An ALJ will

"generally give more weight to the opinion of a specialist about medical issues related to his or

her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. §

404.1527(d)(5).  Thus, were Dr. Mellk a liver expert, the ALJ might have erred by not allowing

his testimony.  However, Dr. Mellk specializes in nephrology and internal medicine.[6]  West's

National Physician Directory.  Nephrology is the "study of the anatomy, physiology, and

pathology of the kidney."  Mosby's at 1167.  As Plaintiff does not allege any disability relating to

her kidneys, Dr. Mellk was no more qualified to testify than Dr. Fechner, and ALJ Lissek did not

err by failing to allow Dr. Mellk to testify.

---

 [6] Though Dr. Mellk's specializations are not contained in the record, a court may take
judicial notice of any fact "capable of accurate and ready determination by resort to sources
whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201.  Judicial notice may be
taken at any stage of a proceeding, including appeal, so long as it is not unfair to the parties to do
so.  In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).  The information regarding
Dr. Mellk's specialties in the West National Physician Directory is derived from the American
Medical Association's Physician Masterfiles, and thus its accuracy cannot reasonably be
questioned.

**2.** **Did the ALJ Err by Failing to Give Any Evidentiary Support for His Residual Functional Capacity Determination?**

Plaintiff claims that ALJ Lissek failed to list any evidentiary reason for his RFC determination. (Pl.'s Br. at 28.) Specifically, Plaintiff argues that the ALJ merely listed the evidence before him before stating his conclusion. (Id.) An ALJ is required to "make specific findings of fact as to the claimant's residual functional capacity." Burnett, 220 F.3d at 120. Furthermore, the ALJ must issue findings and conclusions that are both "comprehensive and analytic." Cotter, 642 F.2d at 705; Burnett, 220 F.3d at 121. "In making a residual functional capacity determination, the ALJ must consider all evidence before him" and "he must give some indication of the evidence he rejects and his reason for discounting such evidence." Burnett, 220 F.3d at 120.

ALJ Lissek's decision, read as a whole, indicates that he did consider all the evidence before making specific findings of fact regarding Plaintiff's RFC. He begins his analysis of Plaintiff's RFC on page two of his opinion, listing Plaintiff's complaints and descriptions of her physical functional limitations. (Tr. 13.) He proceeds to discuss the medical evidence submitted by numerous doctors and treatment centers. (Tr. 13-14.) ALJ Lissek discusses the borderline abnormal EKG performed on Plaintiff, and mentions the lack of any surgery or hospital visits before determining her heart murmur does not result in physical limitations. (Tr. 14.) He also acknowledges Plaintiff's complaints of boils and cellulitis, but notes that these do not satisfy the twelve month requirement. (Id.) Regarding Plaintiff's gastrointestinal problems, ALJ Lissek notes that they were successfully treated with medication. (Id.) Finally, the ALJ compares

15

Plaintiff's hepatitis related complaints to the medical records, and found them inconsistent.  (Id.)

In determining Plaintiff's RFC, the ALJ also relied on testimony by Dr. Fechner, who testified as to which of Plaintiff's claimed medical conditions were demonstrable by medically accepted techniques.  (Id.)  Though Plaintiff claims that the ALJ merely stated that Plaintiff's impairments do not preclude all work activity, the section of the opinion that Plaintiff quotes is only the conclusion paragraph, and does not encompass the entire analysis.  (Tr. 16.)  As the ALJ made "specific findings of fact as to the claimant's residual functional capacity," his determination at step four meets the requirements of Burnett.  220 F.3d at 120.

## 3.  Did ALJ Lissek Err in Concluding that Plaintiff Could Resume Her Past Relevant Work?

Plaintiff claims that the ALJ did not adequately engage in a task by task analysis in determining whether her impairments allowed her to engage in her past relevant work.  (Pl.'s Br. at 32.)  In the fourth step, the ALJ must make findings of fact relating to the Plaintiff's RFC and the physical and mental demands of the Plaintiff's past relevant work, as well as compare the RFC to the past relevant work to determine whether Plaintiff can perform the past relevant work. Burnett, 220 F.3d at 120.  The "Secretary must consider medical factors in relation to specific vocational factors when making a disability determination."  Stevenson v. Heckler, 624 F. Supp. 1189, 1191 (E.D. Pa. 1986).  As discussed above, ALJ Lissek adequately addressed Plaintiff's RFC, and the step four determination is supported by substantial evidence.

Plaintiff argues that ALJ Lissek merely found her past relevant work to be sedentary and found Plaintiff to be capable of the same level of sedentary work, but did not make findings of fact relating to the specific demands of her past relevant work.  (Pl.'s Br. at 32.)  However, the ALJ cites to Plaintiff's descriptions of her previous work activity, where Plaintiff agreed that her

16

job as a financial assistant was "basically, a desk job[,]" where she "didn't have to lift anything heavy." (Tr. 173.)  Furthermore, Plaintiff indicated that the majority of her day as a financial assistant was spent sitting, and she never lifted more than ten pounds. (Tr. 66.)  As ALJ Lissek considered these factors, he properly made findings of fact as to Plaintiff's past relevant work as required by <u>Burnett</u>, 220 F.3d at 120.

The ALJ also compared Plaintiff's RFC to her past relevant work, fulfilling <u>Burnett</u>.  <u>Id.</u> ALJ Lissek determined that although Plaintiff's cardiac, gastrointestinal, and skin impairments did not preclude work activity, her hepatitis related fatigue did.  (Tr. 16.)  He discussed how Plaintiff's fatigue renders her incapable of a work level higher than sedentary, and determined that Plaintiff's former job involved sedentary work.  (<u>Id.</u>)  The determination that Plaintiff could resume her past relevant work is supported by substantial evidence.

### 4.      Did the ALJ Err by Ignoring the Commissioner's Subjective Pain Regulations?

Plaintiff claims that ALJ Lissek failed to analyze Plaintiff's subjective complaints properly.  In assessing whether the claimant is disabled, the ALJ must give consideration to the claimant's subjective complaints of pain.  10 C.F.R. §§ 404.1529, 416.929; <u>Dorf v. Bowen</u>, 794 F.2d 896, 901 (3d Cir. 1986).  However, subjective complaints alone will not establish that a claimant is disabled.  <u>Dorf</u>, 794 F.2d at 901.  Although "assertions of pain must be given serious consideration," <u>Smith v. Califano</u>, 637 F.2d 968, 972 (3d Cir. 1981), Plaintiff still "bears the burden of demonstrating that her subjective complaints were substantiated by medical evidence." <u>Alexander v. Shalala</u>, 927 F. Supp. 785, 795 (D.N.J. 1995), <u>aff'd</u>, 85 F.3d 611 (3d Cir. 1996). Accordingly, subjective claims of pain and impairment "will not alone establish . . . [disability]; there must be medical signs and laboratory findings . . . [demonstrating] medical impairments,

which could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 404.1529(a).  The <u>Alexander</u> court further noted "even situations where a subjective complaint of pain coincides with a known impairment, it is within the discretion of an ALJ to discount that claim if there is a rational basis to do so."  <u>Alexander</u>, 927 F. Supp. at 795.

Plaintiff claims that ALJ Lissek ignored her complaints of shingles, clouded mental activity, pain from her Interferon and Robotal treatments, and her inability to sit or stand for long periods of time.  (Pl.'s Br. at 37.)  While Plaintiff has testified that her Interferon and Robotal treatments render her incapable of taking care of herself, she also testified that those same treatments were discontinued because of severe fatigue, weight loss, and leg swelling.  (Tr. 176-178, 188.)  Plaintiff testified as well that she suffered from shingles, affecting her on her legs primarily.  (Tr. 188.)  However, her shingles episode occurred solely in the year 2002, is not recurring, and is unlikely to be connected to her hepatitis.  (<u>Id.</u>)  Plaintiff's pain from sitting for long periods of time while suffering from boils and cellulitis "was taken care of with the proper antibiotics," and nevertheless, the ailments themselves did not persist for the requisite twelve months to be considered disabilities.  (Tr. 196.)

Finally, as to Plaintiff's fatigue and clouded mental state, ALJ Lissek did not fail to consider these complaints.  Dr. Fechner testified that the fatigue was likely caused by enzymes resulting from the breakdown of liver cells.  (Tr. 201.)  He believed that physically, Plaintiff would be able to function in a light duty work environment.  (<u>Id.</u>)  However, Dr. Fechner believed the complaints of fatigue were credible, and because of them, Plaintiff would be restricted to sedentary work activity.  (Tr. 201.)  In making his final determination, ALJ Lissek adopted Dr. Fechner's testimony, and therefore the ALJ considered the subjective complaints of fatigue and a clouded mental state, when determining Plaintiff's RFC.  (Tr. 15.)  Thus, ALJ

18

Lissek did not fail to analyze Plaintiff's subjective complaints.

## **CONCLUSION**

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

Dated: April 12, 2006

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.